**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| ELI INZLICHT-SPREI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SCRIPPS NETWORKS INTERACTIVE, INC., JARL MOHN, NICHOLAS B. PAUMGARTEN, JEFFREY SAGANSKY, RONALD W. TYSOE, GINA L. BIANCHINI, MICHAEL R. COSTA, PHILIP I. KENT, KENNETH W. LOWE, DONALD E. MEIHAUS, RICHELLE P. PARHAM, MARY MCCABE PEIRCE, and WESLEY W. SCRIPPS,<br><br>Defendants. | Civil Action No.:<br><br><br>**JURY DEMAND** |

Plaintiff Eli Inzlicht-Sprei ("Plaintiff"), by his undersigned attorneys, alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

## NATURE AND SUMMARY OF THE ACTION

1. Plaintiff brings this action, individually, as a public stockholder of Scripps Networks Interactive, Inc. ("Scripps" or the "Company") against the members of Scripps Board of Directors (the "Board" or the "Individual Defendants") and Scripps for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act"), and Rule 14a-9 promulgated thereunder ("Rule 14a-9"), and on behalf of himself and a class of public stockholders of Scripps against the Individual Defendants for breach of fiduciary duty.

2. On July 31, 2017, Discovery Communications, Inc. ("Discovery") and Scripps announced that they signed a definitive agreement for Discovery to acquire Scripps in a cash-and-stock transaction valued at $14.6 billion, or $90 per share, based on Discovery's Friday, July

21 closing price. The purchase price represents a premium of 34% to Scripps' unaffected share price as of Tuesday, July 18, 2017. (the "Transaction"). The Transaction is expected to close by early 2018.

3. Scripps shareholders will receive $90 per share under the terms of the agreement, comprised of $63.00 per share in cash and $27.00 per share in Class C Common shares of Discovery stock, based on Discovery's Friday, July 21, 2017 closing price. The stock portion will be subject to a collar based on the volume weighted average price of Discovery Class C Common Shares over the 15 trading days ending on the third trading day prior to closing (the "Average Discovery Price"). Scripps shareholders will receive 1.2096 Discovery Class C Common shares if the Average Discovery Price is at or below $22.32, and 0.9408 Discovery Class C Common shares if the Average Discovery Price is at or above $28.70. If the Average Discovery Price is greater than $22.32 but less than $28.70, Scripps shareholders will receive a number of shares between 1.2096 and 0.9408 equal to $27.00 in value. If the Average Discovery Price is between $22.32 and $25.51, Discovery has the option to pay additional cash instead of issuing more shares.

4. Scripps shareholders will also have the option to elect to receive their consideration in cash, stock or the mixture described above, subject to *pro rata* cut backs to the extent cash or stock is oversubscribed. This purchase price implies a total transaction value of $14.6 billion, including the assumption of Scripps' net debt of approximately $2.7 billion. Post-closing, Scripps' shareholders will own approximately 20% of Discovery's fully diluted common shares and Discovery's shareholders will own approximately 80%. This calculation is based on the number of Discovery shares outstanding today.

5. On September 14, 2017, Defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Transaction.

6. The Registration Statement omits material information with respect the Transaction. For these reasons and as set forth in detail herein, the Individual Defendants have

2

violated federal securities laws. Accordingly, Plaintiff seeks to enjoin the Transaction or recover damages resulting from the Individual Defendants' violations of these laws. Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

8. This Court has jurisdiction over Defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Scripps is incorporated in this District.

## THE PARTIES

10. *Plaintiff Eli Inzlicht-Sprei* is, and has been at all times relevant hereto, a stockholder of Scripps. *See* attached certification.

11. *Defendant Scripps* is a corporation organized and existing under the laws of the State of Ohio. It maintains its principal executive offices at 9721 Sherrill Boulevard, Knoxville, TN 37932.

12. *Defendant Jarl Mohn* ("Mohn") serves as a director on the Company's Board of Directors (the "Board").

13. *Defendant Nicholas B. Paumgarten* ("Paumgarten") serves as a director on the Company's Board.

3

14. ***Defendant Jeffrey Sagansky*** ("Sagansky") serves as a director on the Company's Board.

15. ***Defendant Ronald W. Tysoe*** ("Tysoe") serves as a director on the Company's Board.

16. ***Defendant Gina L. Bianchini*** ("Bianchini") serves as a director on the Company's Board.

17. ***Defendant Michael R. Costa*** ("Costa") serves as a director on the Company's Board.

18. ***Defendant Philip I. Kent*** ("Kent") serves as a director on the Company's Board.

19. ***Defendant Kenneth W. Lowe*** ("Lowe") serves as a director on the Company's Board.

20. ***Defendant Donald E. Meihaus*** ("Meihaus") serves as a director on the Company's Board.

21. ***Defendant Richelle P. Parham*** ("Parham") serves as a director on the Company's Board.

22. ***Defendant Mary McCabe Peirce*** ("Peirce") serves as a director on the Company's Board.

23. ***Defendant Wesley W. Scripps*** ("Scripps") serves as a director on the Company's Board.

24. Defendants Mohn, Paumgarten, Sagansky, Tysoe, Bianchini, Costa, Kent, Lowe, Meihaus. Parham, Peirce, and Scripps are collectively referred to herein as the "Individual Defendants."

25. Defendant Scripps and the Individual Defendants are collectively referred to as the "Defendants."

## CLASS ACTION ALLEGATIONS

26. Plaintiff brings his claim as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Scripps common stock

4

(the "Class").  Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

27. Plaintiff's claim is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

28. The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  As of March 13, 2017, there were approximately 95,858,201 shares of Company common stock issued and outstanding.  All members of the Class may be identified from records maintained by Scripps or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

29. Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, among *inter alia*:

   (a) Is the Class entitled to injunctive relief or damages as a result of Defendants' wrongful conduct;

   (b) Whether Defendants have disclosed and will disclose all material facts about the Transaction to stockholders;

   (c) Have the Individual Defendants breached their fiduciary duties of loyalty and/or care with respect to Plaintiff and the other members of the Class in connection with the Merger; and

   (e) Whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

30. Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

31.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

32.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### The Company

33.     Scripps is a global media company with respected high-profile brands and purports to be a leading developer of lifestyle-oriented content, providing primarily home, food, travel and other lifestyle-related programming.  The Company's content is distributed via multiple methods, including television, the internet, digital platforms and licensing arrangements. Scripps portfolio of networks includes HGTV, Food Network, Travel Channel, DIY Network, Cooking Channel and Great American Country within and outside the United States, with the exception of Great American Country, which is only distributed in the United States, and Fine Living, Asian Food Channel ("AFC") and TVN S.A.'s ("TVN") portfolio of networks outside the United States. Additionally, outside the United States, the Company participates in UKTV, a joint venture with BBC Worldwide Limited (the "BBC").  The Company's businesses engage audiences and efficiently serve advertisers by producing and delivering entertaining and highly-useful content that focuses on specifically-defined topics of interest.

### Flawed Sales Process

34.     Despite Scripps' financial success and positioning for growth, the Board conducted a flawed sale process tilted in favor of a transaction with Discovery.

35.     The Board initially rebuffed potential purchasers by informing them that Scripps was not for sale.

6

36. Later, when the Board began to entertain expressions of interest from Company C and Discovery, the Board did not properly shop Scripps or attempt to arrange for an auction to produce the highest bidder.

37. Even when Company C expressed an interest in matching or surpassing the offer to purchase made by Discovery with a superior all-cash offer, the Board moved forward with Discovery rather than further engaging in discussions with Company C.

38. On July 31, 2017, Discovery and Scripps jointly announced that they had signed a definitive agreement for Discovery to acquire Scripps in a cash-and-stock transaction valued at $14.6 billion, or $90 per share, based on Discovery's Friday, July 21, 2017 closing price. The purchase price represented a premium of 34% to Scripps' unaffected share price as of Tuesday, July 18, 2017. The press release further stated:

> **Transaction Details**
>
> Scripps shareholders will receive $90 per share under the terms of the agreement, comprised of $63.00 per share in cash and $27.00 per share in Class C Common shares of Discovery stock, based on Discovery's Friday, July 21 closing price. The stock portion will be subject to a collar based on the volume weighted average price of Discovery Class C Common Shares over the 15 trading days ending on the third trading day prior to closing (the "Average Discovery Price"). Scripps shareholders will receive 1.2096 Discovery Class C Common shares if the Average Discovery Price is at or below $22.32, and 0.9408 Discovery Class C Common shares if the Average Discovery Price is at or above $28.70. If the Average Discovery Price is greater than $22.32 but less than $28.70, Scripps shareholders will receive a number of shares between 1.2096 and 0.9408 equal to $27.00 in value. If the Average Discovery Price is between $22.32 and $25.51, Discovery has the option to pay additional cash instead of issuing more shares.
>
> Scripps shareholders will have the option to elect to receive their consideration in cash, stock or the mixture described above, subject to pro rata cut backs to the extent cash or stock is oversubscribed.

7

This purchase price implies a total transaction value of $14.6 billion, including the assumption of Scripps' net debt of approximately $2.7 billion. Post-closing, Scripps' shareholders will own approximately 20% of Discovery's fully diluted common shares and Discovery's shareholders will own approximately 80%. This calculation is based on the number of Discovery shares outstanding today.

The cash portion of the purchase price will be financed with a combination of new debt and cash on hand. Discovery has secured fully committed financing from affiliates of Goldman Sachs & Co. LLC to fund the acquisition. Discovery expects to maintain investment grade ratings throughout this transaction. As part of its commitment to de-lever its balance sheet, Discovery intends to suspend its share repurchase program until such time as its credit metrics are in line with its rating. Specifically, Discovery expects to be below 3.5x gross debt to AOIBDA within the first two years after the transaction closes, using substantially all free cash flow to reduce pre-payable and/or short-term debt.

Mr. Lowe is expected to join Discovery's board of directors following the close of the transaction.

The transaction is subject to approval by Discovery and Scripps' shareholders, regulatory approvals, and other customary closing conditions.

John C. Malone, Advance/Newhouse Programming Partnership and members of the Scripps family have entered into voting agreements to vote in favor of the transaction and take certain other actions, in each case subject to the terms and conditions of their respective agreements.

### The Merger Agreement's Deal Protection Provisions Deter Superior Offers

40. In addition to failing to conduct a fair and reasonable sales process, the Individual Defendants agreed to certain deal protection provisions in the Agreement that operate conjunctively to deter other suitors from submitting a superior offer for Scripps.

41. The terms of the Agreement substantially favor Discovery and are calculated to stop other suitors from making competing offers. For example, the Company is forbidden to solicit any completing acquisition proposals. The Agreement provides as follows:

**6.2 Company Acquisition Proposal.**

(a) No Solicitation or Negotiation. From and after the date of this Agreement until the earlier to occur of the Effective Time and the termination of this Agreement in accordance with Article VIII, except as expressly permitted by this Section 6.2, the Company shall not, and shall cause its and its Subsidiaries' directors, officers and employees not to, and shall instruct its and their respective investment bankers, attorneys, accountants and other advisors or representatives (collectively, along with such directors, officers and employees, "Representatives") not to, directly or indirectly:

    (i) solicit, initiate, knowingly induce, knowingly encourage or knowingly facilitate any inquiries or the making of any proposal or offer that constitutes, or would reasonably be expected to lead to, a Company Acquisition Proposal;

    (ii) participate in any discussions or negotiations with any Person regarding any Company Acquisition Proposal;

    (iii) provide any non-public information or data concerning the Company or any of its Subsidiaries to any Person in connection with any Company Acquisition Proposal; or

    (iv) approve or recommend, make any public statement approving or recommending, or enter into any agreement relating to, any inquiry, proposal or offer that constitutes, or would reasonably be expected to lead to, a Company Acquisition Proposal.

The Company shall, and the Company shall cause its Subsidiaries and Representatives to, immediately cease and cause to be terminated any discussions and negotiations with any Person conducted heretofore with respect to any Company Acquisition Proposal, or proposal that would reasonably be expected to lead to a Company Acquisition Proposal, and

shall promptly terminate access by any such Person to any physical or electronic data rooms relating to any such Company Acquisition Proposal. The Company shall take all actions necessary to enforce its rights under the provisions of any "standstill" agreement between the Company and any Person (other than Parent), and shall not grant any waiver of, or agree to any amendment or modification to, any such agreement, to permit such person to submit a Company Acquisition Proposal; provided that the foregoing shall not restrict the Company from permitting a Person to orally request the waiver of a "standstill" or similar obligation or from granting such a waiver, in each case, to the extent the Company's board of directors determines in good faith, after consultation with outside legal counsel, that the failure to take such action would reasonably be expected to constitute a breach of the directors' fiduciary duties under applicable Law.

Agreement and Plan of Merger, pp. 52-53.

42. While there is an exception that would allow the Company to respond to an unsolicited competing acquisition offer, *see* Agreement Sec. 6.2 (b), the Agreement also grants certain matching rights to Discovery which will make obtaining a superior acquisition proposal difficult, *see* Agreement Sec. 6.2(f).

43. Moreover, Defendants agreed to an extraordinary breakup fee of $356,000,000 in the event that a superior acquisition proposal could be obtained. *See* Agreement Sec. 8.5. The size of the breakup fee will in actuality prevent any competing acquisition proposal from coming forward, and was designed to do just that.

### **The Company Will Be Acquired For Inadequate Consideration**

44. The Merger Consideration Scripps shareholders stand to receive if the Transaction is consummated fails to adequately compensate them for their shares.

45. The offer price is significantly below the highest share price indicated by certain valuation analyses performed by the Company's two financial advisors.

46. The Merger Consideration is also inadequate in light of the Company's recent financial performance and strategic plans.

# The Registration Statement Is False and Misleading
## As It Omits Material Information

47. The Registration Statement omits certain material information regarding the Transaction.

48. Scripps' Board retained two financial advisors, Allen & Co. LLC ("Allen & Co.") and J.P. Morgan Securities LLC ("J.P. Morgan"), but no explanation is given for the reason.

49. Allen & Co. had a conflict of interest as a managing director of Allen & Co. is a member of the Board of Discovery.

50. The financial analyses supporting the fairness opinions of both Allen & Co. and J.P. Morgan appear to be an improper collaboration between the two advisory firms rather than two distinct and independent analyses.

51. Material information is omitted as to which firm did what part of the financial analyses or whether one firm was the primary author of the financial analysis and the other firm simply reviewed the analysis.

52. Material information is omitted to explain why, as to their Discounted Cash Flow ("DCF") analyses, Allen & Co. arrived at a purported fair market value for Scripps of $74 to $96 per share, but J.P. Morgan arrived at a purported fair market value for Scripps of $74 to $98 per share. There is no explanation as to why there is a two dollar per share difference. This is material information because each advisor purportedly used the same set of projections, terminal growth rate, and discount rate.

53. The advisory fees to Allen & Co. and JP Morgan are $44 million and $37 million, respectively, for a total of $81 million. In contrast, the fees Discovery paid its two financial advisors of $27.5 million to Guggenheim and $37.5 million to Goldman Sachs are significantly lower. Moreover, the financial analysis efforts of Discovery's financial advisors were not collaborative but two distinct analyses. No explanation is given for why Scripps is paying significantly more for one combined analysis than Discovery paid for two distinct analyses.

54. The DCF analyses performed by Allen & Co. and J.P. Morgan appear to have been performed independently, yet each relies on the same projection of cash flows through December 2026. Information is omitted as to why each advisor used the same exact projection of cash flows.

55. In addition, both Allen & Co. and J.P. Morgan use the same perpetuity growth rates but Defendants do not disclose from where the inputs for this growth rate were derived nor do they disclose why the two advisors used the same perpetuity growth rates of 0.5% to 1.5%.

56. Further, both Allen & Co. and J.P. Morgan use the same discount rates but do not disclose key inputs to derive these discount rates nor do they disclose why the two advisors used the same discount rates of 7.5% to 8.5%.

57. Moreover, using the same assumptions, each advisor reaches a different upper range of value, $96 per share in the case of Allen & Co. and $98 per share in the case of J.P. Morgan, yet no explanation is given how the two advisors could reach a different conclusion using the exact same data.

58. In addition, in the prospective projections of cash flow, Defendants and their advisors for the purposes of the advisors' analyses, included stock based compensation and treated it as a cash expense.

59. However, material information has been omitted in that the amount of the future projected stock based compensation is not provided, so shareholders of Scripps cannot discern what reduction on free cash flows the addition of the future hypothetical stock based compensation as a cash expense has had, and how that reduction in free cash flows has negatively impacted the appropriate price per share that should be paid for Scripps stock.

12

Case 3:17-cv-00420-PLR-CCS   Document 1   Filed 09/20/17   Page 12 of 16   PageID #: 12

# COUNT I

### Class Claims Against Defendants for Violations of Section 14(a) of the Exchange Act And SEC Rule 14a-9 Promulgated Thereunder

60. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

61. SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

62. Defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

63. Defendants were aware of this information and of their duty to disclose this information in the Registration Statement. The Registration Statement was prepared, reviewed, and/or disseminated by Defendants. The Registration Statement misrepresented and/or omitted material facts, including material information about the unfair sale process for the Company, the financial analyses performed by the Company's financial advisor. Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

64. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to

13

vote on the Transaction. In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Registration Statement and in other information reasonably available to unitholders.

65. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

66. Because of the false and misleading statements in the Registration Statement, Plaintiff and the putative Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure Defendants' misconduct is corrected.

## COUNT II

### Class Claims Against the Individual Defendants for
### Violation of Section 20(a) of the Exchange Act

67. Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

68. The Individual Defendants acted as controlling persons of Scripps within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or directors of Scripps and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

69. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

70. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have

14

had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Transaction. They were, thus, directly involved in the making of this document.

71. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered —descriptions which had input from the Individual Defendants

72. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

73. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A) declaring this action to be a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

(B) declaring that the Registration Statement is materially false or misleading;

(C) enjoining, preliminarily and permanently, the Transaction;

(D) in the event that the Transaction is consummated before the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

15

(E) directing that Defendants account to Plaintiff and the other members of the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties.

(F) awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(G) granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

DATED: September 20, 2017

**BRANSTETTER, STRANCH & JENNINGS, PLLC**

By: */s/ J. Gerard Stranch, IV*
    J. Gerard Stranch, IV
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Telephone: (615) 254-8801
Facsimile: (615) 255-5419
Email: gstranch@bsjfirm.com

**GAINEY McKENNA & EGLESTON**
Thomas J. McKenna
Gregory M. Egleston
440 Park Avenue South
New York, NY 10016
Telephone: (212) 983-1300
Facsimile: (212) 983-0380
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

*Attorneys for Plaintiff*